# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| AUSTIN GARRICK SMITH, | : | CIVIL ACTION NO. |
| Gwinnett Cnty. ID # 97002391, | : | 1:14-CV-00276-TWT-JSA |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| JUDGE KATHRYN M. SCHRADER, | : | PRISONER CIVIL ACTION |
| JUDGE MICHAEL GREENE, | : | 42 U.S.C. § 1983 |
| DA DANIEL J. PORTER, | : | |
| ADA KAREN WEST, | : | |
| OFFICER KEITH KARLSEN, | : | |
| UNKNOWN OFFICER, | : | |
| GWINNETT COUNTY, | : | |
|     Defendants. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Gwinnett County Detention Center in Lawrenceville, Georgia, has submitted *pro se* a civil rights complaint seeking relief under 42 U.S.C. § 1983 (Doc. 1), an Ex Parte Motion For DFACS Records (Doc. 4), a Motion for Custodian to Provide Filing and Service (Doc. 5), and Supplemental Pleadings for 42 USC 1983 Action (Doc. 6).[1]  Plaintiff has received leave to proceed *in forma pauperis*. (Docs. 2-3). **IT IS RECOMMENDED** that his complaint be **DISMISSED** as frivolous and his motions be **DENIED**.

---

[1]Because all of the claims in Plaintiff's original complaint (Doc. 1 at 6 *et seq.*) are also contained in his supplemental pleadings (Doc. 6), the Court addresses only the latter document.

## I. The Legal Framework

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that

2

states a plausible claim for relief survives." *Id.* at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## II.     The Complaint and Supplemental Pleadings

Plaintiff sues (1) Gwinnett County District Attorney ("DA") Daniel J. Porter; (2) Gwinnett County Assistant District Attorney ("ADA") Karen West; (3) Gwinnett County Superior Court Judge Kathryn Schrader; (4) Gwinnett County Recorder's Court Judge Michael Greene; (5) Gwinnett County Police Department Narcotics Officer Keith Karlsen; (6) an unknown Gwinnett County Police Department officer; and (7) Gwinnett County as a municipality (Doc. 6 at 3 (Am. Attachm. A)). Plaintiff recounts a series of Gwinnett County court proceedings and alleges a litany of constitutional violations in connection with those proceedings, as outlined below.

On February 8, 2013, Plaintiff accepted a plea bargain before Judge Shrader on charges of possession of a controlled substance and driving under the influence of alcohol, reduced to the lesser included offense of misdemeanor reckless driving. (*Id.* at 4-5 (Am. Attachm. B ¶ 1); *see* Doc. 1-1 at 3, 21). Although the plea apparently required the suspension of Plaintiff's driver's license by force of law, Plaintiff claims that to induce him to "plead out," his retained counsel "intentionally misled" him to

3

believe that he would be able to continue to use it.  (Doc. 6 Am. Attachm. B ¶ 1). Plaintiff received a sentence of four years, the first four months to be served in home confinement and the remainder on probation.  (Doc. 1-1 at 3, 23).  Plaintiff acknowledged that he understood "that for the entire period of time that [he is] on probation, [he], [his] house, [his] car, [and his] belongings are subject to a search by a probation officer or a police officer searching for contraband without a warrant." (*Id.* at 9, 16).[2]

Plaintiff alleges that on February 20, 2013, without "reasonable cause," Officer Karlsen "led a 4th amendment waivered search" of his home, "detained [him] for approximately three hours during this illegal search, against [his] will, and subjected [him] to malicious oppression."  (Doc. 6 Am. Attachm. B ¶ 2).  He alleges that Defendant West has failed to investigate his claim of bad faith (*id.* ¶ 2a); Officer Karlsen failed to act on Plaintiff's tip about a "pill mill" that had "most likely" caused

---

[2] **Fourth Amendment waiver.** The Defendant shall submit to a search of person, residence, papers, vehicle and/or effects at any time of day or night without a search warrant, whenever requested to do so by a Probation Officer or other law enforcement officer upon reasonable cause to believe that the Defendant is in violation of probation or otherwise acting in violation of the law, and the Defendant shall specifically consent to the use of anything seized as evidence in any judicial proceedings or trial.

(Doc. 1-1 at 23 (setting forth one of the conditions of Plaintiff's probation)).

the death of his children's stepfather (*id.* ¶ 3); and Gwinnett County "does not prosecute 'pill mill' doctors because it is 'too hard of a case to make.' " (*id.* ¶ 3a).

On April 3, 2013, Plaintiff was arrested for driving on a suspended license by two Gwinnett County police officers who are not named Defendants in this case. (*Id.* ¶ 4). Plaintiff states, "This is in violation of the 5th, 8th and 14th amendments as I was subjected to cruel and unusual punishment of a predatory nature on behalf of the State since I was intentionally mislead [sic] about the status of my license." (*Id.*). On April 4, 2013, Officer Karlsen issued an arrest warrant "for manufacturing marijuana based on [Plaintiff's claimed] legitimate indoor growing hobby . . . and the illegally seized evidence found at [his] residence on February 20, 2013." (*Id.* ¶ 5 (citing (http://hydroponicheat.blogspot.com)). Plaintiff asks the Court to "note [that] the District Attorney is proceeding under a lesser charge of possession of marijuana with intent to distribute." (*Id.*).

On April 5, 2013, Plaintiff was arrested at his home on the marijuana charge. An unknown Gwinnett County police officer "contacted Department of Family and Children Services, Child Protective Services [and] told them a lie that resulted in [his] children being taken out of school and placed into foster care. The lie was uncovered at a deprivation hearing in front of Judge Robert Rodatus at Gwinnett County Juvenile

5

Court the next week." (*Id.* ¶ 6). "Stipulations were also put in place where [his] mother had to stay at [his] house with [his] children [as] opposed to moving them in with her in Cobb County. This was to maintain jurisdiction under Gwinnett County's branch of DFACS." (*Id.*). Plaintiff alleges that "[t]he false report given by Unknown Officer related to a restraining order on behalf of the children against their mother." (*Id.* ¶ 6a).

Plaintiff's ongoing detention at the Gwinnett County Detention Center began on April 5 "without reasonable bail being set." (*Id.* ¶ 7). He further alleges that he was brutally assaulted on June 13, 2013, but he does not claim direct involvement by any of the six Defendants other than to allege that the assault occurred while he was "unlawfully incarcerated by Officer Karlsen." (*Id.* ¶ 8). He also complains about Judge Schrader's denial of bail in his marijuana case on November 15, 2013. (*Id.* ¶¶ 11-12).

Plaintiff further complains about the selection and performance of appointed counsel for his marijuana case, alleging a conflict of interest based on counsel's representation of the mother of his children in an ongoing child custody dispute between the mother and Plaintiff. (*Id.* ¶¶ 9, 12a). He notes that he filed a post-conviction habeas petition on October 8, 2013, challenging his February 8, 2013

6

convictions, which caused his inmate account to be frozen, allegedly depriving him of access to the courts (*id.* ¶ 10); and he states that he is currently exhausting his remedies on his access to courts claim before adding it to his complaint (*id.* ¶ 10a).

Plaintiff alleges that on December 10, 2013, at a bench trial on the charge of driving with a suspended license, Judge Greene did not allow him to challenge the convictions underlying the suspension, thereby violating "the 1st, 4th, 5th, 6th, 8th and 14th amendments." (*Id.* ¶ 13). He states that "[i]t appears Gwinnett County practices selective enforcement of the law for O.C.G.A. § 40-5-75(b) and 40-5-54(b) [concerning the suspension of driver's licenses in Georgia] and collects profit from this practice." (*Id.* ¶ 13a). He notes that he has been unsuccessful in obtaining "transcripts and other necessary documents" from the Recorder's Court Clerk "to perfect his appeal." (*Id.* ¶ 13b).

Plaintiff further complains about the conduct of the December 13, 2013 hearing on his habeas challenge to his February 8, 2013 convictions. (*Id.* ¶¶ 14-15, 15a; *see id.* at 19 ("Even though progress had been and was being made to uncover the truth, the hearing was halted and I was instructed to submit my testimony and closing argument via writing within 10 days.")). He accuses Judge Shrader and ADA West of conspiring to violate his rights because Shrader allowed West ten days to respond to

7

his post-hearing brief (*id.* ¶ 15); and he complains generally about the conduct of his ongoing criminal proceedings, noting that twice, on February 18 and May 13, 2014, he was offered probation in exchange for a guilty plea, although he notes that the offer was withdrawn at his arraignment on June 10, 2014 after he told the trial court that he felt pressured to plead guilty (*id.* ¶ 17).

By way of relief, Plaintiff asks this Court to (1) enjoin three state court criminal cases in which he is the defendant and enjoin his own state habeas case; (2) settle three of those cases;[3] (3) issue declaratory and injunctive relief against all Defendants and all policies that violate his civil rights; (4) issue mandamus relief requiring DA Porter to expunge Plaintiff's records in these cases and enjoin Porter from prosecuting Plaintiff for a period of seven years; (5) award actual, nominal and compensatory damages, and damages for mental and emotional anguish and injury to his reputation; and (6) award punitive damages "where they are justified and allowed by law." (Doc. 6 at 23-25 (Am. Attachm. C)).

## III. Discussion

---

[3] Plaintiff asks the Court to enjoin his plea-bargained (12-B-03740-3), habeas (13-A-08677-3), marijuana (13-B-03106-3) and driving with suspended license (13-0022828) cases, and to settle his plea-bargained, marijuana and habeas cases. (Doc. 6 at 23 (Am. Attachm. C)).

8

### A.     Plaintiff's Requested Prospective Relief Is Not Available.

Prospective relief is unavailable to Plaintiff in this action.  This Court is not empowered to enjoin or settle Plaintiff's state court criminal proceedings except in the most extraordinary circumstances, which simply do not obtain here.  *See Younger v. Harris*, 401 U.S. 37 (1971).  In *Younger*, the Supreme Court reaffirmed "the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions," *id.* at 53, noting "the longstanding public policy" that federal courts should not intervene in an ongoing state criminal prosecution "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief," *id.* at 43-44.  Furthermore, a litigant whose alleged injury "is solely that incidental to every criminal proceeding brought lawfully and in good faith . . . is not entitled to equitable relief," which is available only in extraordinary circumstances involving "bad faith or harassment."  *Id.* at 49-50 (internal quotations omitted); *see also Hughes v. AG of Fla.*, 377 F.3d 1258, 1263 n.7 (11th Cir. 2004) (noting that "the Court in *Younger* [also] left room for federal equitable intervention . . . where the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions, or where there exist other extraordinary circumstances in which the necessary irreparable injury can be shown

9

even in the absence of the usual prerequisites of bad faith and harassment") (citations and internal quotations omitted).

There is no suggestion here that any state law at issue flagrantly violates the United States Constitution, and Plaintiff's allegations of bad faith and/or harassment are not well-taken. Plaintiff entered a negotiated plea at his February 8, 2013 plea hearing, and as a result his license was suspended and he waived any challenge to a warrantless search of his home. Plaintiff's subsequent arrests were the direct result of the consequences of his February 8 convictions and his post-conviction activity in violation of those consequences. The court advised Plaintiff at his February 8 hearing that a condition of his probation was to "[a]void injurious and vicious habits, especially alcohol intoxication and narcotics and other dangerous drugs unless lawfully prescribed." (Doc. 1-1 at 7). Plaintiff nevertheless admittedly continued to engage in his home-grown marijuana hobby.

If Plaintiff wishes to raise in this court a challenge to his February 8 convictions based on the allegedly misleading advice he received from his retained attorney regarding the consequences of his plea, he may do so only via a federal habeas petition, and then only after he has exhausted his state court remedies, which it is apparent he has not done. He may also challenge the denial of pre-trial bail via a habeas corpus

petition, but again only after exhausting his state court remedies, which it is apparent from his complaint that he did not do before filing it on January 21, 2014.[4] *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

"*Younger* abstention applies . . . if (1) there are pending state proceedings at the time of the federal action, (2) the proceedings implicate important state interests, and (3) the proceedings provide an adequate opportunity for raising federal constitutional questions." *For Your Eyes Alone, Inc v. City of Columbus*, 281 F.3d 1209, 1217 (11th Cir. 2002). The Court finds that all of the prerequisites for *Younger* abstention are present in this case. In particular, Plaintiff has an adequate opportunity to raise his federal constitutional claims in his ongoing criminal proceedings, including any direct

---

[4] Plaintiff notes that he "mailed a pretrial Habeas Corpus on January 7, 2014 to Superior Court of Gwinnett County to address the issue of bond and being held on a warrant issued under the void sentence of case 12-B03740-3." (Doc. 1 at 7).

11

appeal he might file.  Plaintiff has not demonstrated otherwise.

Plaintiff also may not obtain mandamus relief against DA Porter or any other Defendant.  "Mandamus is an extraordinary remedy and will not lie if other remedies are available." *Lifestar Ambulance Serv. v. United States*, 365 F.3d 1293, 1298 (11th Cir. 2004).  And "a federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973).  This Court's original mandamus jurisdiction extends only to an action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The All Writs Act, 28 U.S.C. § 1651, "creates no jurisdiction," but instead empowers a federal district court to issue "all writs necessary or appropriate in aid of" its "jurisdiction previously acquired on some other independent ground." *Brittingham v. Comm'r*, 451 F.2d 315, 317 (5th Cir. 1971).

### B.  Monetary Relief Is Also Unavailable to Plaintiff.

Plaintiff may not obtain monetary relief against the state judges, Schrader and Greene.  A judge acting in his "judicial capacity" is absolutely immune from damage claims in a § 1983 action unless the judge has "acted in the clear absence of all

jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotations omitted); *see Blankenship v. Miller*, 486 Fed. Appx. 76, 76-77 (11th Cir. 2012) (citing *Bolin*, and based on a state judge's absolute immunity from damage claims, affirming dismissal of complaint alleging that judge "tried to deceive the Plaintiff by stating [that his court] lacked the authority to correct the errors of the lower court"). "This [absolute judicial] immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin*, 225 F.3d at 1239. As there is no suggestion in Plaintiff's pleadings that either judge "acted in the clear absence of all jurisdiction," *id.* at 1239, Plaintiff's claims for monetary relief against them fail.

Likewise, Plaintiff may not obtain monetary relief from DA Porter or ADA West. "Prosecutors are also entitled to absolute immunity from damages for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the [state's] case." *Bolin*, 225 F.3d at 1242; *see also Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) ("A prosecutor is entitled to absolute immunity [from money damages] for all actions he takes while performing his function as an advocate for the government.").[5]

---

[5]Although a prosecutor is not immune when he or she "functions as an investigator," *Leal*, 359 F.3d at 1353, Plaintiff has not alleged "sufficient factual matter, accepted as true, to state a claim to relief," *see Iqbal*, 556 U.S. at 678, regarding whether either prosecutor violated his rights while

13

In addition, under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), in order to recover money damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal" or otherwise expunged, declared invalid, or called into question. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (noting that the Court's relevant precedents, "taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration").

To the extent that Plaintiff may obtain money damages of any kind in this action, he may do so only against the Gwinnett County police officers or Gwinnett County itself. Plaintiff, however, has not alleged a cause of action against either officer sufficient to allow this case to proceed without interfering, in violation of *Younger*, with the ongoing state court criminal and child custody proceedings that Plaintiff has described in his complaint.

Furthermore, Plaintiff acknowledges that in connection with his negotiated plea

---

acting as an investigator.

he waived any Fourth Amendment challenge to Officer Karlsen's search of his home, and he does not challenge the facts underlying the resulting arrest warrant that Karlsen swore out based on Plaintiff's marijuana cultivation hobby. Plaintiff also has not presented a claim against the unknown officer specific enough to survive frivolity review. *See Iqbal*, 556 U.S. at 678 (allegations must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). Plaintiff's allegation that the unknown officer gave a false report about a restraining order (Doc. 6 ¶ 6a), without more, is insufficient to meet *Iqbal*'s test.

Finally, Plaintiff's only allegations against Gwinnett County (*see id.* ¶¶ 3a, 13a) are not only entirely speculative but they also involve matters for which the County is not responsible—the enforcement by Gwinnett County prosecutors of state laws involving either doctors who operate "pill mills" or the suspension of driver's licenses by force of state law. These allegations fail to state a claim for relief against the County.

> To hold a municipality liable . . . a plaintiff must point to a policy of the municipality, the enforcement of which will infringe a constitutional right. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997) ("Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."). . . . *See Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) ("A policy is a decision that is officially adopted

15

> by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality . . . . A custom is a practice that is so settled and permanent that it takes on the force of law.").

*GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 n.17 (11th Cir. 2012) (citation omitted); *see also McMillian v. Johnson*, 88 F.3d 1573, 1583 (11th Cir. 1996) (citing *Owens v. Fulton County*, 877 F.2d 947, 952 (11th Cir. 1989), to the effect that "a Georgia district attorney acts for, and exercises the power of, the state rather than the county when making prosecutorial decisions," and "the prosecution of state offenses is an exercise of state [not county] authority"); *McDaniel v. Yearwood*, No. 2:11-CV-165, 2012 U.S. Dist. LEXIS 19667, at *17-18 (N.D. Ga. Feb. 16, 2012) (a county "can be held liable under Section 1983 for the acts or omissions of [a sheriff] and his deputies only if, first, [the sheriff] and his deputies acted on behalf of the county, and second, acted pursuant to an official policy or custom of the county"). Plaintiff has not made out a plausible claim that his constitutional rights have been infringed by a Gwinnett County policy or custom regarding the prosecution of "pill mill" doctors or the enforcement of state laws concerning the suspension of driver's licenses.

**IV.   Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint as supplemented (Doc. 6) be **DISMISSED** for failure to state a claim, 28 U.S.C. § 1915A, and that his motions for DFACS records (Doc. 4) and for service (Doc. 5) be **DENIED as moot**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 17th day of July, 2014.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)